IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     *Plaintiff,* | § | |
| | § | Nº: 6:70-CV-5193 (Schneider) |
| VS. | § | |
| | § | (CARTHAGE I.S.D.) |
| TEXAS EDUCATION AGENCY, ET AL, | § | |
|     *Defendants.* | § | |

# JOINT STATUS REPORT

Pursuant to the Court's October 28, 2009 Order, Plaintiff United States and Defendant Carthage Independent School District file this Joint Status Report setting out the background and significant events leading up to the Joint Motion to Dismiss, filed on October 8, 2008.

The United States filed the Complaint in this matter on August 7, 1970, against the Texas Education Agency and numerous school districts, including the Carthage Independent School District ("District"), for failure to disestablish the dual school system that was once mandated by state law. At the time, the District's schools were racially identifiable based on student enrollment and faculty assignment.

Soon after the Complaint was filed, the District proposed a desegregation plan that included (1) reassigning students so that they attended the same school for specific grades; (2) policies that would require any decision to hire, assign, promote, pay, demote, or dismiss any staff member who worked directly with children be made without regard to race, color, or national origin; (3) a non-discriminatory transportation policy; (4) a non-discriminatory extracurricular policy; and (5) a non-discriminatory transfer policy. The United States supported the District's desegregation plan, and

on August 24, 1970, Judge William Wayne Justice entered an Order approving the plan ("1970 Desegregation Plan").

The following school year (1970-71), the District reassigned students pursuant to the 1970 Desegregation Plan, which included a single grade configuration (i.e., all students for each grade attend the same school). The 1970-71 enrollment numbers were:

| Carthage I.S.D., 1970 - 1971 School Year[1] | | | | |
|---|---|---|---|---|
| School | Grades | Total Enrollment | White Students | Black Students |
| Libby Elementary | 1-2 | 425 | 253 (59.5%) | 172 (40.5%) |
| Baker Elementary | 3-5 | 670 | 386 (57.6%) | 284 (42.4%) |
| PB Koonce Middle School | 6-7 | 482 | 289 (60%) | 193 (40%) |
| Carthage Junior High (formerly Turner Junior High) | 8-9 | 529 | 287 (54.3%) | 242 (45.7%) |
| Carthage High School | 10-12 | 667 | 421 (63.1%) | 246 (36.9%) |
| Districtwide | | 2,773 | 1,636 (59%) | 1,137 (41%) |

Two years later, in August 1972, the Court issued a Consent Decree and Order that modified the District's annual reporting requirements to be consistent with the reports required in United States v. Hinds County Sch. Bd., 433 F.2d 611, 618-619 (5th Cir. 1970).

---

[1] DIRECTORY, PUBLIC ELEMENTARY AND SECONDARY SCHOOLS IN LARGE SCHOOL DISTRICTS, WITH ENROLLMENT AND INSTRUCTIONAL STAFF BY RACE: FALL 1970, U.S. Dept. Of Health, Education, and Welfare, Office of Education.

The next significant event came on July 28, 1999 when the Court issued a Show Cause Order giving the United States thirty days to show cause why the District was not entitled to a declaration of unitary status and dismissal of the case. The United States filed a Response on August 30, 1999, setting forth the legal standards for a declaration of unitary status and asking for additional time to engage in discovery in order to fully assess the District's compliance with the desegregation order. The Court granted time for discovery in a September 21, 1999 scheduling order. The United States collected and reviewed information from the District, conducted on-site visits to the District's schools, and participated in community meetings with concerned citizens. The United States concluded that the District had not achieved unitary status in any facet of its operations. The District disagreed and filed a Motion for Declaration of Unitary Status. The Court scheduled an evidentiary hearing for July 2000. In lieu of continuing to litigate the issues raised by the District's Motion for Declaration of Unitary Status, the United States and the District negotiated in good faith to resolve their differences in all areas. The negotiations led to a Consent Order that the Court approved on July 21, 2000 ("2000 Consent Order").

The 2000 Consent Order addressed all facets of the District's operations, including facilities, transportation, student assignment, faculty and staff assignment, and extracurricular activities. Under the monitoring and reporting provisions of the 2000 Consent Order, the District was required to produce compliance reports in July of 2001, 2002, and 2003. Upon receiving the compliance reports, the United States had a window of time to raise questions or deficiencies. After the 2003 reporting cycle, the District had the option to move for a declaration of unitary status and dismissal of this case.

The District complied with the 2000 Consent Order by providing timely compliance reports in July of 2001, 2002, and 2003. The reports evidenced the District's good faith efforts to comply with the terms of the 2000 Consent Order. The District showed progress in increasing the number of minority students identified as gifted and talented students, addressing the educational needs of at-risk students, monitoring student discipline, decreasing corporal punishment, improving the identification of students with special education needs, and overcoming financial hurdles that prevented students from participating in cheerleading. The District also showed good faith in implementing programs to recruit and retain qualified minority employees.

Following the final reporting cycle provided for by the 2000 Consent Order, the District did not exercise its option to move for a declaration of unitary status and dismissal of this case.

In February 2006, the United States initiated a case review to determine whether the District had fulfilled its desegregation obligations. The United States requested information concerning extracurricular activities. The District produced yearbooks in 2006 that showed progress in providing equal access to extracurricular activities.

The United States also requested information about the District's efforts to recruit and retain minority faculty and staff, particularly at Carthage Primary and Libby Elementary. The District's overall faculty was approximately 9% minority. In January 2008, the District produced information highlighting its efforts to identify, hire, and retain minority teachers. The District tried to overcome the small pool of minority applicants in East Texas by posting teaching vacancies at colleges with significant minority populations, including Prairie View A&M, Texas College, Texas Southern University, Wiley College, Grambling State University, and Jarvis Christian College. The District also sent a representative each year to the Prairie View A&M job fair, and sent a Hispanic principal to

4

recruit at Stephen F. Austin State University, Sam Houston State University, and the University of Texas at Tyler. The District represented that all of its administrators were aware of the minority teacher shortage and took that into consideration when reviewing applications and/or interviewing candidates. Finally, the District fostered a welcoming environment for all teachers by requiring them to participate in cultural diversity training. The District's efforts yielded positive results. For instance, a Hispanic candidate was hired as the Carthage Primary Principal in 2006. Also, from 2005-08, Carthage Primary and Libby Elementary had 20 teaching vacancies, 4 of which were filled by Black teachers and 2 by Hispanic teachers. Additionally, over the same period, Carthage Primary and Libby Elementary had 21 paraprofessional vacancies, 9 of which were filled by Black paraprofessionals.

Based on a review of the compliance reports produced pursuant to the 2000 Consent Order and the subsequent supplemental information produced by the District in 2006 and 2008, the United States concluded that the District had fulfilled its affirmative desegregation obligations under the Fourteenth Amendment and applicable federal law and was entitled to a declaration of unitary status.

The United States and District filed the pending Agreed Order of Dismissal on October 8, 2008.

In the Joint Motion to Dismiss, the parties argue that the District has fully and satisfactorily complied with the Court's desegregation orders for a reasonable period of time, and has eliminated the vestiges of past *de jure* discrimination to the extent practicable in the areas of student assignment, faculty and staff assignment, transportation, facilities, and extracurricular activities. See e.g., Bd. of Educ. of Oklahoma City Public Sch. v. Dowell, 498 U.S. 237, 250 (1991); Freeman v. Pitts, 503 U.S. 467, 491-93 (1992). The parties also argue that the District has demonstrated a good faith

5

commitment to the whole of the Court's orders and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. See Freeman, 503 U.S. at 491. The District has therefore met the legal standards for a declaration of unitary status, entitling the District to dismissal of this action.

The Joint Motion to Dismiss is rooted in the understanding that federal supervision of a formerly *de jure* school system was intended to be a temporary measure to remedy past discrimination. Dowell, 498 U.S. at 247. The determination of unitary status should recognize that the "concern for the important values of local control of public school systems dictates that a federal court's regulatory control of such systems not extend beyond the time required to remedy the effects of past intentional discrimination." Id. at 248 (citations omitted). The District has undertaken efforts "to achieve the greatest possible degree of actual desegregation, taking into account the practicalities of the situation." See Davis v. Bd. of Sch. Comm'rs of Mobile County, 402 U.S. 33, 37 (1971). The parties agree that the time has come for control over school operations to be returned to the District.

Respectfully submitted,

FOR THE UNITED STATES:

THOMAS E. PEREZ
Assistant Attorney General

Date: December 3, 2009

_____
AMY I. BERMAN
KRISHNA K. JUVVADI
U.S. Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Suite 4300
Washington, D.C. 20530
Telephone: (202) 514-4092
Facsimile: (202) 514-8337

FOR THE CARTHAGE I.S.D.:

Date: December 3, 2009

_____
JOHN C. HARDY
JOHN M. HARDY
Hardy & Atherton, P.C.
One American Center, Suite 750
909 ESE Loop 323
Tyler, Texas 75701
Telephone: (903) 561-8400
Facsimile: (903) 561-8228

7

# Certificate of Service

I certify that on the 3rd day of December, 2009, a true copy of the foregoing Joint Status Report was provided to the following counsel of record via electronic service or first class US Mail with proper postage attached:

Krishna K. Juvvadi, Trial Attorney
Educational Opportunities Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Patrick Henry Building, Suite 4300
Washington, D.C. 20530
Tel: 202-305-3186
Fax: 202-514-8337
***Counsel for Plaintiff, United States of America***

Merle Dover, Assistant Attorney General
General Litigation Division
Office of the Texas Attorney General
P.O. Box 12548, Capitol Station
Austin, TX 78711-2458
***Counsel for Defendant Texas Education Agency***

/s/ *John M. Hardy*
John M. Hardy